(107 N. W. 200.)

---

James Robertson v. William Moses and James Wylie.

Opinion filed February 24, 1906. Rehearing denied July 30, 1906.

**Sales — Warranty — Fidings Sustained by Evidence.**

1. In an action to recover damages upon an alleged warranty of the value of certain bank stock, which was tried to the court without a jury, it is *held,* that the findings for plaintiff are sustained by the evidence.

**Same — Damages — Prima Facie Value of a Note Is Its Face and Accrued Interest.**

  2. The face or prima facie value of a promissory note at any point of time is the principal with the interest then accrued; and this is true, even though the unearned interest has in form been added to the face of the note.

**Same.**

  3. The defendants, in the sale of certain bank stock to plaintiff, guaranteed that it was, when estimated by the assets and liabilities of the bank as disclosed by its books, of a certain value. In making the computation they included the unearned interest upon the bills receivable as an asset. *Held,* that the recovery awarded plaintiff by the trial court for the difference in value resulting from the erroneous computation was proper and correct in amount.

**Pleading — Variance in Civil Action — Prejudice.**

  4. Under our statute (section 5293, Rev. Codes 1899) a variance in a civil action is not material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense.

**Same.**

  5. Upon the facts stated in the opinion it is *held* that there was no material variance between the pleadings and proof, and, further, that the trial court was not guilty of an irregularity in its proceedings.

Appeal from District Court, Grand Forks county; *Fisk,* J.

Action by James Robertson against William Moses and another. From a judgment in favor of plaintiff, and an order denying a new trial, defendants appeal.

Affirmed.

*Guy C. H. Corliss,* for appellants.
*Charles F. Templeton,* for respondent.

YOUNG, J. The plaintiff brought this action to recover damages for the breach of an alleged guaranty of the value of 80 shares of stock in the Citizens' State Bank of Drayton, which were sold to the plaintiff by the defendants in February, 1903. The complaint alleges that the defendants sold the stock at $112.50 per share and as an inducement to the purchase represented "that said stock was then worth the sum of $112.50 per share and promised and agreed that if said stock was not then actually worth the sum of $112.50 per share the defendants would thereafter, upon the plaintiff's request, pay to him in cash a sum of money equivalent to the differ-

ence between the actual cash value of said stock and the price
paid therefor;" that the plaintiff relied upon said promise; that the
stock was actually only worth $90 per share; that plaintiff has de-
manded the payment of the difference, which demand has been re-
fused—and prays for judgment for $1,800, which is the amount
of the alleged difference in value. The defendants in answer to the
complaint admit the sale of the stock and at the price alleged in
the complaint, but deny making any guaranty whatever in connec-
tion with the sale and allege that the plaintiff made a full and per-
sonal examination of the bills receivable, assets, liabilities and affairs
of said bank, and relied upon said investigation in purchasing
said stock; that the only representations made by defendants "was
to present for the inspection of said plaintiff, previous to said
sale, the books, papers and assets of said bank, to be examined by
plaintiff before purchasing said stock." The case was, by stipula-
tion of counsel, tried to the court without a jury. The findings
were in favor of plaintiff. The court found that the stock was
actually worth $92.65 per share at the date of the transfer. Other-
wise the findings follow substantially the language of the complaint.
In addition the court made the following finding: "The court of
its own motion finds that at the time of the sale of the said stock it
was agreed between the parties that in estimating the value thereof,
only such assets and liabilities of the bank should be considered
as the books and papers of the bank then disclosed. And the actual
value of said stock as hereinbefore found is based upon the then
actual value of such assets and the amount of the then existing
liabilities as the books and papers of the bank then disclosed." The
amount of the recovery awarded was $1,588, being the difference
between $92.65 per share and $112.50 per share, which was the
amount paid for the stock. Defendants moved for a new trial upon
a statement of case, alleging as grounds therefor. (1) "Irregularity
in the proceedings of the court and abuse of discretion by which
the defendants were prevented from having a fair trial. (2) Sur-
prise which ordinary prudence could not have guarded against, in
that the court unexpectedly decided the case upon a ground not
set forth in the complaint, and not litigated on the trial." The
motion was denied, and defendants have appealed from the order
denying the same and from the judgment.

The grounds urged for reversal upon this appeal are those pre-
sented upon the motion for new trial: i. e., (1) insufficiency of the

evidence to justify the findings, and (2) irregularity in the pro-
ceedings of the court and surprise and prejudice resulting there-
from. Are the findings justified by the evidence? This question
must receive an affirmative answer. The court found in substance
(construing the preceding finding as modified, as we must, by the
finding made by the court on its own motion and above set out),
that the parties to the sale agreed that the value of the stock should
be determined from such assets and liabilities of the bank as were
then disclosed by its books and paper; that the defendants repre-
sented that the actual value of the stock figured upon this basis
was $112.50 per share, and agreed that if it was not of that value
to make good the difference upon demand; and that the actual
value of the stock computed upon the basis thus agreed upon was
only $92.65 per share. Eight witnesses testified relative to the
transaction. These include the plaintiff and the two defendants,
two clerks who were then employed in the bank, a director who
heard the matter discussed between the plaintiff and defendants at
numerous meetings of the directors and two cashiers of other banks
who were chosen as arbiters, and went to Drayton for the purpose
of adjusting the controversy. The statements of the several wit-
nesses differ in language and in some respects in substance so
that it may be said there are as many versions of the transaction
as there are witnesses, but as to the vital and controlling facts
found by the trial court there is, as we view it, no substantial
conflict.

The capital stock of the bank was $15,000 which was divided
into 150 shares. The defendant Moses was president. He was
also connected with two other banks. The defendant Wylie had
been one of its directors from its organization in 1898, and for
about a month preceding the sale to the plaintiff had been acting
as cashier. On or about the 3d day of February, 1903, the de-
fendants sold and transferred the 80 shares of stock in question,
which was the controlling interest, to the plaintiff and the latter
took possession. Previous to that time the plaintiff had had no ex-
perience in banking, and was ignorant of banking terms and
methods, and was not competent to compute the value of bank
stock from an examination of the books. He had known Mr.
Wylie for many years, and had confidence in his integrity. His
proposition was to buy the stock for what it was worth, and he left
it with the defendants to compute its value, and relied upon their

assurance that the amount they stated to him, $112.50 per share, was correct, and their further assurance that if it was not correct they would make the difference good. The assets of the bank, including its loans, were exhibited to the plaintiff for his inspection. He was acquainted in a general way with the financial standing of the makers of the bills receivable. During the negotiations he objected to a certain note for $1,000 which it was agreed was of little or no value, also to a $980 note and certain other small notes of doubtful value, and stated that if they were taken out in fixing the value he would purchase the stock. This the defendants declined to do. After some delay he concluded to make the purchase on the basis of the assets as they were taking them all at their face value. His testimony on this point is as follows: "I concluded to take the notes as affecting the value of the stock at full value. I took the loans and discounts at face value. They said they were not going to dispose of their interest in the bank they had established there for two or three years, and cut out that paper. I said I will take that paper for your good will. You can figure that poor paper right into the value of your stock. And the reason for it was in figuring up the stock nothing was put in for the good will. That is why I agreed to accept the paper. I told Wylie to go and figure up the stock what it is worth, and I will pay you. He figured it up at $112.50 per share, and I paid him. Early in the negotiations I told defendants that I had been advised to get an expert to go through the books. They replied that it would not be necessary to go to that expense. Wylie said: 'I will figure up what the stock is worth. * * * If any figures on this stock ain't what I say they are, we are perfectly able and perfectly willing to make them what they are. * * * He said he would make it worth $112.50. * * * Mr. Wylie and Mr. Moses both stated that they would do so.' They guaranteed the stock was worth so much, or if it was not they would make it worth it. They said 'you can go through those books after you buy this stock, and if you can find anything wrong we will make it all right, we are willing and able to do it.'" Wylie testified that plaintiff offered "to take the stock at what it was worth." In looking over the papers he objected to a $1,000 note and certain other notes and urged that they be thrown out, but finally consented to take the stock having them included in the valuation. "I made the statement that if they discovered any mistake in the books or any discrepancy in

any way that we stood ready to make it good. * * * The statement we made was that if you find that we misrepresented anything we stand ready to make it good." Moses testified: "We figured from the books to arrive at what we would take. * * * The book value of that stock was taken as a basis in fixing the value of it for the purpose of this transaction. In arriving at the value of the stock we figured up what we claimed were the assets and liabilities. That is the way we arrived at what I call the book value." J. D. Wallace, called by the plaintiff, testified that he had been one of the directors of the bank since its organization; that he had attended at least a dozen meetings of the board which were called to consider the controversy as to the sale of the stock. He testified that at these meetings the plaintiff stated his version of the transaction, which is substantially as above set out, and that the defendants stated that they were still willing to make the stock worth $112.50 if it was not worth that amount. Upon cross-examination by defendants, he testified as follows: "There was a discussion as to the process by which they fixed the value of this stock when it was sold. They differed on the proper way of reckoning interest; that seemed to be the difference of opinions. The word "book value" was mentioned frequently by Mr. Wylie and Mr. Robertson agreed to it if it showed without a mistake or some error in computing. * * * The books were to be the authority unless there could be shown to be a wrong computing. Q. In other words, then, they were to test the value of the stock by what the books showed if the books were straight? A. That is the way I understood it. Q. So the sale was on the basis of the book value if the books were correct? A. Yes, sir. Q. And that seemed in that conversation to be agreed to by all parties? A. They didn't differ on this at all."

It is not necessary to refer to the testimony of the other witnesses. It sufficiently appears from the testimony of this witness, and the testimony of the parties to the contract, that the sale was made upon the basis of the assets and liabilities of the bank as then disclosed by its books and paper as found by the trial court, and, further, that the plaintiff agreed to accept such assets at par or face value, and that the defendants agreed to make good their representation that the stock when figured upon the basis thus agreed upon was worth $112.50 in case it was found that their computation was erroneous. Was the value of this stock correctly com-

puted by the defendants? This has been at all times and still is the point and only point of difference. This question turns upon the answer to another question, and that is whether the unearned interest upon its bills receivable was an asset proper to be taken into account in fixing the value of the stock? The major part of the bank's assets consisted of its bills receivable. The custom followed by it in making and renewing loans was to have the borrower execute a note bearing interest only after maturity, and to add to the face of the note the amount of interest to be earned to its maturity. In other words, the unearned interest was added to the face of the bills receivable, and the notes were carried upon the books at the amount stated upon their face and were counted at this increased amount by the defendants in figuring the value of the stock; that is, the unearned interest was added to the principal and the total amount was counted as an asset. The inclusion of this unearned interest represents the only difference between the parties as to the correct basis for finding the value of the stock. The defendants counted the unearned interest as an asset in their computation, and claim that this was proper. The plaintiff contends that it was in no sense an asset and that he is entitled to reimbursement for the difference in the valuation of the stock which resulted from including it. If it was properly included, the computation of the defendants was correct, and plaintiff cannot recover. If, on the other hand, it was not properly reckoned as an asset, the plaintiff is entitled to recover. The value of the stock as found by the trial court is based upon the testimony of one Arthur L. Harris, an experienced banker. This witness took the liabilities and assets of the bank as shown by the books of the bank on the day of the sale, and computed the values of the different items which went to make up its assets, each being stated separately. The only item upon which he placed a valuation different from that used by the defendants in their computation was the bills receivable. Aside from this difference the correctness of his computation and valuations was not disputed, and unless the defendants are correct in their contention the amount of recovery awarded by the trial court is correct. They undertook to correctly figure the value of the stock from the assets and liabilities disclosed by the bankbooks. They included unearned interest as an asset in fixing the value of the bills receivable. This was unwarranted. It cannot be said that unearned interest is an asset. Clearly, the mere adding of un-

earned interest to the face of a note does not increase its value. The face value or prima facie value of a promissory note at any point of time is the principal and interest then accrued. Holt v. Van Eps, 1 Dak. 209, 46 N. W. 689; Anderson v. Bank, 6 N. D. 498, 72 N. W. 916; Bank v. Bank, 28 N. Y. 654, 86 Am. Dec. 273; Booth v. Powers, 56 N. Y. 22; Atkinson v. R. P. Co., 43 Hun. (N. Y.) 173. Interest until earned has no existence. To illustrate, suppose a person makes two separate loans on the same day of $1,000 each and for one year at an agreed rate of 10 per cent, and in one case the year's interest which is payable at maturity is added to the face of the note, and the other is not, can it be said that one note is of face or nominal value of $1,100 and the other $1,000? Clearly not. Both notes call for the same amount at maturity, and the unearned interest is no more an asset in one case than the other. The addition of the unearned interest to the face of the note is merely a different and perhaps more convenient way of evidencing the maker's promise but the change in the form of the promise does not change the fact that it is unearned interest, and is not an asset. The witness Harris estimated the actual value of the bills receivable at the date of the sale at their face value with accrued interest. This was also the prima facie value, and was in fact the basis of value agreed upon between the parties. The defendants guaranteed that they had correctly computed the value of the stock from the banks' assets and liabilities as disclosed by its books. They did not do so, and the attack upon the findings for the alleged insufficiency of the evidence must, therefore, fail.

The contention that the court was guilty of an irregularity in its proceedings and of an abuse of discretion whereby the defendants were surprised and prejudiced is, in our opinion, without merit. The grounds of this contention were presented to the trial court in the form of an objection at the hearing upon the settlement of the findings. The record shows that when the court had orally announced its findings, including the findings made upon its own motion and previously quoted, counsel for defendant objected to the decision of the case upon the grounds announced by the court, alleging that the complaint was framed upon the theory that defendants had represented that the stock was actually worth $112.50 per share, and not that the defendants' guaranty was "a guaranty as to what the books showed it to be actually worth on the

theory of figuring the present value of the bills receivable;" that defendants had not consciously litigated the case upon the theory upon which it was decided; that had they been apprised of this theory they would have gone into the question of the accuracy of the computation of the value of the bills receivable; that the change of theory eliminates good will as an element of value; and that the effect of the decision is to deprive the defendants of a full and fair trial upon the merits upon which the case is decided. At this juncture the court informed counsel that he could have further time and opportunity to show that the computation upon which its decisions as to the value of the bank was based was not correct. The offer was not accepted, but counsel demanded a right to further investigate and litigate the contract found by the court. That request was denied "for the reason that the contract between the parties was fully litigated and adjusted."

Counsel for defendants subsequently embodied the substance of the foregoing objection in an affidavit, and this, together with the supplementary affidavits of the two defendants were used upon the motion for new trial. We have examined the record with care, are unable to find that the defendants were in any respect prejudiced by the court's action. True, the complaint alleges that the defendants guaranteed the actual value of the stock, and the court found that they guaranteed its value when estimated in a particular way, but in a manner upon which the parties had agreed, i. e., from the assets and liabilities disclosed by the bank's books at the time of the sale. The finding is according to the fact as testified to by the parties themselves. It is based upon evidence received without objection. In fact, the objectionable finding has its strongest support in the testimony of the witness Wallace elicited upon examination by defendant's counsel. We think the trial court was correct in its reason for overruling the defendants' objection, i. e., because the question as to what the contract was, had been fully litigated. If the finding as to value can be said to present a variance from the allegation of "actual value," in the complaint, it is clearly not a material one. Our Code (section 5293, Rev. Codes 1899) provides that "no variance between the allegations of a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." As illustrating the application of the rule declared in the above section,

see Halloran v. Holmes, 13 N. D. 411, 101 N. W. 310. It may be conceded, as stated in the defendant's affidavits that the good will of the bank had a considerable value; also that other elements of value existed which were not shown as assets upon the books It is patent, however, that they have no just claim of prejudice through the fact that, for any cause, excusable or otherwise, they failed to offer evidence as to their value. The parties by their contract had limited the determination of value to the assets and liabilities as disclosed by the books. None of the several elements referred to appeared upon the books. Had the evidence been offered and received, it could in no way have affected the finding.

Finding no error in the record, the order and judgment will be affirmed. All concur.