PETER MATHIAS, Respondent, v. STATE FARMERS' MUTUAL HAIL INSURANCE COMPANY, a Corporation, Appellant.

(168 N. W. 664.)

**Hail insurance contract — loss under — adjustment of loss — failure to pay — action to recover — oral agreement on adjustment — amount of loss so fixed — receipt given for less — signed by mistake.**

1. This action is based on an adjustment of loss under a hail insurance contract. The plaintiff alleged and proved to the satisfaction of the jury that by oral agreement his loss was adjusted at $335; that, being unable to read English, he signed a paper fixing the loss at $250.

**Signing of paper — does not make a contract — consent of parties — must be free and mutual — fraud — undue influence — mistake.**

2. The signing of a paper does not make a contract. Under the plain words of the statute there can be no contract where the consent of the parties to the

terms of the same is not free and mutual; and consent is not free when it is obtained by fraud, undue influence, or mistake. In this case the jury found and had a right to find that the document claimed to be a written contract was not a contract.

Opinion filed February 7, 1918. Rehearing denied July 30, 1918.

Appeal from the District Court of Hettinger County, Honorable *W. C. Crawford,* Judge.

Defendant appeals.

Affirmed.

*Jacobsen & Murray* and *Moonan & Moonan,* for appellant.

Plaintiff's cause of action is based wholly upon a contract of adjustment of the loss.

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Civ. Code, § 5889; Alsterberb v. Bennet, 14 N. D. 596, 106 N. W. 49.

Evidence of prior parol agreements is not permissible. 17 Cyc. 669.

In order to permit parol evidence of fraud, it should be pleaded. Conn v. Rossarond, 161 S. W. 73; Baur v. Raylorr, 96 N. W. 268.

It was plaintiff's own fault if he did not understand the settlement; he had full opportunity to acquaint himself with all the facts.

"If the creditor fails to read the condition as stated in a letter from the debtor, or in a receipt given him to sign, or even that he could not read or write, and did not know of the condition indorsed on a check tendered in full payment, these facts do not affect the operation of the rule to the effect that his acceptance will discharge the claim in full." 1 C. J. 564.

Where fraud is not pleaded, such written acceptance is conclusive. The evidence did not justify the finding of fraud, and from plaintiff's own testimony it conclusively appears that there was no fraud, and no facts shown, upon which the written instrument could be set aside. Raymond v. Edelbrock, 15 N. D. 231, 107 N. W. 194; Standard Mfg. Co. v. Hudson, 88 S. W. 137.

*V. H. Crane,* for respondent.

No reply is necessary in framing the issues unless a counterclaim is

40 N. D.—16.

pleaded in the answer, or unless upon motion the court requires a reply. Comp. Laws 1913, § 7452.

"Where an instrument is pleaded in defense or read in evidence on the trial under a general denial, in support of a defense in an action at law, plaintiff has the same right to show that it was obtained from him by fraud as he would have if it were the subject of a formal issue." Chambovet v. Cagney, 35 N. Y. Super. Ct. 474; Abbott's Trial Brief, 1496, ¶ 275.

Under such circumstances plaintiff is at liberty to show that his signature to the written instrument was obtained by fraud, or by mistake, and evidence upon such subject, and instructions thereon, are proper. Leslie v. Keepers, 31 N. W. 486.

Mistake or fraud may be proved in rebuttal of an accord and satisfaction alleged by defendant. 1 C. J. 582.

In all such cases the rule that prior negotiations are merged in the written agreement has no application. Jones, Ev. p. 546, ¶ 435.

There must be an acceptance of the writing with a full understanding as to the facts. The mere signing of a document does not amount to a contract. Wigmore, Ev. p. 3396, ¶ 2416.

Fraud in the procurement of a contract may be shown by parol, though the claimed contract is in writing, and the effect of the evidence is to contradict or impeach the writing. The plaintiff and defendant here made a parol or oral adjustment of plaintiff's loss by hail; thereafter a writing was presented to plaintiff to be signed, and he signed it in the full belief that it was in accordance with their oral adjustment, and it was so represented to him by defendant, and he, not being able to read the language in which the document was written, relied upon such representations when he signed the same. Such a writing does not make a contract, and plaintiff is not bound by it. Wigmore, Ev. p. 3396, ¶ 2415; Day v. Lown, 1 N. W. 786; Kranch v. Sherwood, 52 N. W. 741.

The adjustment was carried on and settled in the German language. Plaintiff can neither read, speak, nor write the language of the instrument afterward prepared and presented by the adjuster; plaintiff knew its contents only as told to him by the adjuster, and he signed the writing because he was glad to believe it was the same as the oral settle-

ment as to amount. These conditions show fraud as defined by our statute. Comp. Laws 1913, § 5849.

There can be no accord and satisfaction where under such circumstances the amount tendered is insufficient, and the plaintiff was not required to return the money actually paid, but had the right to retain it and sue to recover the actual balance due him under the oral adjustment, which amounted to a settled and fixed claim. Rauen v. Prudential Ins. Co. 106 N. W. 198, 1 C. J. 539, ¶ 40, and cases cited.

In order that the payment of a smaller sum than demanded shall operate as a satisfaction of the entire claim, it must be accepted as such. There must be a positive agreement to accept the amount paid as a full discharge of the debt. 1 C. J. 560, ¶ 83; Rapp v. Gidding, 57 N. W. 237.

In any event, if on the evidence the intention of the parties is in doubt, it is a question for the jury. 1 C. J. 583, ¶ 152.

Whether a release of a debt was fairly obtained, where such release is made the basis of a defense, the question is for the jury. 1 C. J. 561, ¶ 84; Rauen v. Prudential Ins. Co. 106 N. W. 198; 1 C. J. 580, ¶ 143.

The conditions upon which a tendered payment shall be received in full satisfaction of a larger amount of indebtedness must be stated clearly, fully, and explicitly, and the party to whom they are made must understand that he is accepting the conditions and taking the money subject to them. 1 C. J. 557, ¶ 80; Sanders v. Standard Wheel Co. 151 S. W. 674.

There must be no fraud, concealment, or misrepresentation as to material facts. Butler v. Richmond, etc., Co. 88 Ga. 594, 15 S. E. 668; 1 C. J. 571, ¶ 108.

Robinson, J. In this case defendant appeals from a judgment for $92 and costs. The complaint is that in 1914 plaintiff made to defendant his promissory note for $85.94, and in consideration of the same it agreed to insure him against loss by hail to the amount of over $500; that in July, 1914, the crops insured were destroyed by hail and the loss amounted to $500; that afterwards the loss was adjusted at $335, to be paid in cash and in return of the promissory note, and that no payment has been made excepting $164 and the return of the note.

The answer is that the loss was adjusted at the sum of $250, and

not $335, and that the contract of adjustment was reduced to writing and signed by the plaintiff. To the answer there was no reply. It did not state a counterclaim and hence there was no necessity for a reply.

On the trial the plaintiff gave testimony showing the insurance, the loss, and an oral contract of adjustment as alleged in the complaint. The defendant showed a contract of adjustment signed by the plaintiff as alleged in the answer. The testimony of the plaintiff was that he could not read English, and that, after the making of the oral contract for adjustment, he signed the papers, believing that it was in accord with the oral agreement.

The verdict for $92 is well sustained by the evidence. The jury had a right to believe the plaintiff and to find in his favor. Under the testimony the plaintiff contracted to adjust his loss at $335, including his promissory note, and by trick and smoothness the adjuster obtained the signature to a paper which was not the contract. Then, when oral testimony was offered to prove the facts and to show that the alleged written contract is not and never was a contract, it was claimed that such proof was not admissible.

The claim is that by any trick or device a party may obtain the signature of an ignorant, illiterate person to a document in the form of a contract, and then it may not be impeached by proof that it is not a contract. And in such cases by specious and deceptive arguments the judges are too often imposed upon and misled. They forget that the signing of a paper does not make a contract. Under the plain words of the statute there can be no contract where the consent of the parties to the terms of the same is not free and mutual, and consent is not free when it is obtained by fraud, undue influence, or mistake.

In this case the jury found, and had a right to find, that the document claimed to be a written contract was not a contract, and that in truth the contract was as stated in the complaint.

The verdict is just and right, and the judgment is affirmed.

GRACE, J. I dissent.

BIRDZELL and CHRISTIANSON, JJ. I concur in the result.

On Petition for Rehearing.

PER CURIAM. Appellant has filed a petition for a rehearing, wherein he asserts that the trial court erred: (1) In permitting the plaintiff to introduce evidence of fraud in the absence of any pleading on his part alleging fraud; (2) in permitting the plaintiff to introduce parol testimony to contradict the written agreement. And it is contended that the former decision either overlooked, and failed to decide these questions, or else decided them contrary to controlling decisions and statutes. We will consider these propositions in the order stated.

(1) While appellant makes the broad assertion that it was contrary to controlling decisions and statutes of this state to permit the plaintiff to introduce evidence of fraud in absence of pleading on his part alleging fraud, he has failed to cite any statute or decision of this court supporting his contention. And we are satisfied that none can be found. On the contrary, both the statutes and the decisions of this state are to the effect that a plaintiff is not required to reply to new matter in an answer not constituting a counterclaim, except by order of the court; but every allegation of new matter in the answer, not constituting a counterclaim, is deemed controverted by the plaintiff as upon a direct denial or avoidance, by operation of law, and the plaintiff may introduce evidence of any fact tending to deny or avoid the new matter set forth in the answer. See Comp. Laws 1913, §§ 7467, 7477, 7452; Moores v. Tomlinson, 33 N. D. 638, 157 N. W. 685. Appellant entirely ignores the rule announced in the statute, and argues that such rule is unjust and unfair to a defendant, as he may be surprised upon the trial by the introduction of evidence of fraud. A sufficient answer to appellant's contention is that the rule is prescribed by the statute. The statute was made by the legislature, and not by the court. In this connection it may be noted, however, that the statute affords to every defendant an opportunity to apply to the court for an order requiring the plaintiff to reply to new matter in an answer. Even where no such application is made, the court has undoubted power, even upon a trial of the cause, to order a continuance, if the introduction of evidence tends to surprise a defendant and prevent him from obtaining a fair trial. In the case at bar, defendant made no such application. Nor did it assert, either by objection or by motion, that

there was any such degree of variance between the pleadings and the proof as to constitute a failure of proof. And, while defendant moved for a directed verdict, it did not see fit to make this one of the grounds of its motion. Neither did it make any showing to the trial court that it was in any manner surprised or prejudiced by the introduction of the evidence. And "under the provisions of the Code of Civil Procedure (Comp. Laws 1913, § 7478), a variance is immaterial unless actually and prejudicially misleading, and shown to the satisfaction of the court to be so. The effect of these statutory provisions was considered by this court in Halloran v. Holmes, 13 N. D. 411, 416, 101 N. W. 310, wherein this court, speaking through Mr. Justice Engerud, said: "Under the provisions of the Code of Civil Procedure, a variance, unless it amounts to a failure of proof, is not material, unless 'it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits.' If the objecting party asserts that such is its effect, 'the fact shall be proved to the satisfaction of the court, and in what respect he has been misled; and thereupon the court may order the pleading to be amended upon such terms as shall be just.' Rev. Codes 1899, § 5293. 'When the variance is not material as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs.' Rev. Codes 1899, § 5294. The effect of these provisions is to make the materiality of a variance depend upon satisfactory proof that it has actually misled the adverse party to his prejudice. Unless such proof is furnished the variance must be deemed immaterial and be disregarded. Washburn v. Winslow, 16 Minn. 33, Gil. 19; Catlin v. Gunter, 11 N. Y. 368, 62 Am. Dec. 113; North Star Boot & Shoe Co. v. Stebbins, 3 S. D. 540, 54 N. W. 593. In this case, although the defendants objected to the evidence in question on the ground of variance, they did not support their objection by proof, or offer of proof, that they were prejudicially misled by the variance in maintaining their defense on the merits. In the absence of such proof, an objection for variance is unavailing, unless the variance is of such a degree as to be a failure of proof, as defined in § 5295, Rev. Codes 1899. Under that section a failure of proof results only 'when . . . the allegation of the cause of action or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its entire scope and

meaning.'" See also Robertson v. Moses, 15 N. D. 351, 108 N. W. 788; Maloney v. Geiser Mfg. Co. 17 N. D. 195, 115 N. W. 669; Rickel v. Sherman, 34 N. D. 298, 302, 158 N. W. 266.

(2) Upon the second proposition little need be said. For it is elementary that where a writing, by reason of fraud or mistake, does not represent the actual contract made between the parties, and evidences the proposition upon which their minds met, that then the writing may be impeached and the actual contract shown by parol. This proposition is so elementary that citation of authority thereon is wholly unnecessary. These two were the only errors assigned and argued by appellant, and, hence, are the only ones properly before the court on this appeal.

In his petition for rehearing, however, appellant also asserts that the acceptance and retention by the plaintiff of a draft sent by the defendant precludes him from bringing suit. A party who has been induced to enter into a contract by means of fraudulent representations has, on discovery of the fraud, two primary remedies. He may either rescind the contract or affirm it. In case of rescission, he must, as a general rule, restore or offer to restore to the other party the consideration received under the contract. 9 Cyc. 438. This is not only manifestly just, but is a logical result of rescission. For rescission is intended to abrogate the contract and restore the parties to their former position. Hence, a party cannot accept and retain the benefits of a contract which he repudiates. If he desires to rescind, he must rescind in toto. He cannot affirm a contract in part and repudiate it in part. He cannot accept the benefits on the one hand, and shirk the disadvantages on the other. 9 Cyc. 438. In case he affirms the contract he may keep what he has received under it, and also recover from the other party the difference between what he received and what he would have received, if the fraudulent representations had been true. ·Guild v. More, 32 N. D. 432, 155 N. W. 44. Affirmance of a contract voidable for fraud is not a waiver of the fraud, and does not bar the right of the defrauded party to maintain an action to recover the damages, which he has sustained by reason of the fraud, or set up such damages as a defense or by way of counterclaim, if sued upon the contract by the other party. Such affirmance merely bars the right subsequently to rescind the contract. 9 Cyc. 432. In the case at bar, the plaintiff did not seek to

rescind the adjustment agreement which he made with the defendant, and recover on the original cause of action. On the contrary, he bases his cause of action upon, and seeks to enforce, the contract of adjustment which he claims was actually made between the parties. He does not seek to recover the loss sustained under the insurance policy, but seeks to recover only the amount agreed upon in the adjustment between the parties. In this connection it may be noted that the amount which plaintiff seeks to recover, and which he was awarded by the jury, is exactly what he would have been entitled to recover in an action for deceit for the fraud practised upon him; *viz.,* the difference between what he received and what he would have received if the representations made by the defendant's adjuster had been true. And while the action is not one for deceit, it is difficult to see wherein the defendant could be prejudiced, as the issues would be substantially the same in an action for deceit as those which were submitted to the jury in this case. The primary question in the case was whether the plaintiff had been induced to sign the adjustment agreement by means of false and fraudulent representations as to the amount of the consideration to be received by him.

The evidence shows that the plaintiff is unable to read, speak, or understand the English language. Upon the trial he testified through an interpreter. He obtained the insurance policy through the defendant's agent, Graeber. He notified Graeber of the loss under the policy. Some three weeks thereafter the defendant company sent its adjuster, F. R. B. Lamberch, to adjust the loss. It is undisputed that all negotiations between the plaintiff and the adjuster were conducted in the German language. After they had agreed upon the amount of the loss a written loss adjustment was prepared and signed by the adjuster and the plaintiff. It is undisputed that the plaintiff had no knowledge of its contents, nor did any member of his family understand it. The amount of the loss or damage inserted in the agreement is $250. The plaintiff, however, testified positively that the agreement between him and the adjuster was that he (the plaintiff) was to be paid $335 in cash, and that his premium note was to be returned to him. In response to the question, "What was the adjustment?" the interpreter gives plaintiff's answer as follows: "Why, the agreement was that he was to be paid cash $335 and that he did not have to pay no insurance. That is,

he wouldn't have to pay the insurance fee. That was deducted also." The plaintiff reaffirmed this statement, both in his direct examination and his cross-examination. In answer to a question propounded by defendant's counsel upon cross-examination as to whether plaintiff knew the written instrument to be an adjustment of the loss of the grain at the time he signed it, the plaintiff answered that at the time he believed that it was for $335. The plaintiff was the only witness who testified. The defendant did not see fit to offer any testimony, either that of its adjuster or of its agent, Graeber. And as already stated no application was made for a continuance to obtain such testimony, nor was any motion for a new trial made. And so far as the record in this case shows, there is nothing to indicate that the plaintiff's version is not absolutely true. Under the facts as shown by the testimony, and as found by the jury, the adjuster of the defendant company agreed to pay the plaintiff $335 in cash and surrender the premium note to him. He made this agreement in the German language. He thereupon prepared a written adjustment in English and presented it to the plaintiff, who was wholly unable to read it, and manifestly signed it in the belief that it represented the adjustment agreed upon. It is clear that under this state of facts the plaintiff's signature to the adjustment agreement was obtained by fraud.

In his charge the trial judge instructed the jury that, "if the plaintiff signed the written adjustment as introduced in evidence, with full knowledge of its contents, then he is bound by such written adjustment." But that if he was under the impression, and it was represented to him, that the written adjustment was in accordance with their oral agreement, and the oral agreement provided for a different and larger consideration, then he is not bound by the written adjustment, provided his signature thereto was secured by misrepresentation as to what the written adjustment contained. The court further instructed the jury that the burden was on the plaintiff to explain satisfactorily to the jury his signature on the written instrument. And that in order to avoid its consequences he must establish, by a preponderance of the evidence, that the adjustment was different from that disclosed by the written contract, and that he had no knowledge of the contents of the written instrument, and that his signature thereto was obtained by means of, and in reliance upon, the false representations.

The court further instructed the jury that, "in order to avoid the conditions of the written instrument, the evidence must be clear and convincing that it was not the contract of the parties," and that plaintiff, without knowledge of its contents and through misrepresentation, was led to believe that it was different from what it was.

It is true the evidence also shows that the plaintiff received a check for $164.04, as well as his premium note for $85.96, making a total of $250, and that he indorsed the check, and that it was paid by the defendant company in due course. And that he has retained the premium note. It is also true that the authorities recognize the principle or rule of law, that a party may under certain circumstances waive a right of action for fraud. And that it is a general rule that if a defrauded party acquires knowledge of the fraud while the contract remains executory, and thereafter does any act in performance or affirmance of it, or exacts performance from the other party, he condones the fraud and waives his right of action, as under such circumstances the injuries would be largely, if not wholly, self-inflicted. These principles, however, do not conflict with the doctrine that the defrauded party has his election to repudiate the contract or affirm it and sue in deceit. And as the question of waiver is largely one of intent, it is generally one for the jury, and it is only in rare cases that waiver can be said to exist as a matter of law. Waiver requires knowledge. And "exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right, or of his intention to rely upon that right. . . . No one can be said to have waived that which he does not know; or where he has acted under a misapprehension of facts." 40 Cyc. 259, 260. And "acts done in affirmance of the contract can amount to a waiver of the fraud only where they are done with full knowledge of the fraud and of all material facts, and with the intention clearly manifested of abiding by the contract and waiving all right to recover for the deception. Acts which, although in affirmance of the contract, do not indicate any intention to waive the fraud, cannot be held to operate as a waiver." 20 Cyc. 93. In the case at bar the appellant did not raise the question of waiver. It was not presented as one of the grounds on which it moved for a directed verdict. Nor was it presented on this appeal as a ground for a reversal. But inas-

much as some reference is made thereto in the petition for rehearing, we deem it proper to say that we do not believe that, under the evidence in this case, it can be said as a matter of law that the plaintiff waived his right of action. The evidence shows that the plaintiff received the check and his premium note through the defendant's agent, Graeber. The plaintiff was unable to read the check and knew nothing about its contents, except as he was informed by Graeber. At Graeber's request, he indorsed it and turned it over to Graeber, who applied it upon certain indebtedness owing to Graeber by the plaintiff on a certain land contract. Bearing in mind the position of the parties, we are not prepared to say as a matter of law that the plaintiff, by indors- ing the check presented to him by Graeber and accepting and retain- ing his premium note, intended to, and did, waive his right either to maintain an action for deceit, or to sue upon the adjustment actually made between himself and the defendant and insist upon the payment to him of the balance of the consideration actually agreed upon. Upon this feature of the case, the court instructed the jury: "Now, as to the further fact of the check. If a person signs a check or receipt, payment in full of a certain adjustment, he acquiesces in said settle- ment, provided, however, that he had knowledge of its contents. In other words, if he knew and it is brought home to him that this check was given in full settlement of his account, and he accepted it with the knowledge that it was in full settlement, then such receipt is bind- ing upon him, but at the same time, if the check was given to him with the signature thereon acknowledging settlement in full without knowl- edge of its contents or without information concerning it, and was not of the opinion it was an adjustment in full, then he is not bound by such signature to an adjustment in full."

The primary and fundamental propositions upon which defendant's liability depended were fully submitted to the jury under instructions the fairness and correctness of which have not even been questioned. The jury found in plaintiff's favor, and awarded him only the amount to which he was legally entitled if his version of the transaction is true.

A rehearing is denied.

GRACE, J. (dissenting). I dissent from the per curiam opinion signed by the majority court, denying a rehearing. I am fully convinced

that a rehearing should be granted. I do not agree with most of the reasoning of the per curiam opinion.

The plaintiff had a loss to his crop by hail. It is claimed by the plaintiff that the adjustment was for $335 and a return of the premium note. The defendant claims the adjustment was for the amount stated in exhibit 1, which was $250. The adjustment was signed by the adjuster on behalf of the insurance company and by the plaintiff; and this adjustment constitutes a contract, in writing, of settlement, and remains a contract until rescinded and until any money received thereunder is returned. The plaintiff did receive under exhibit 1 the written contract of settlement in question, $164.04 in cash, and his premium note of $85.96, which two amounts aggregate $250, and which fully satisfied said written contract of adjustment and paid the total loss as agreed to in said written contract of adjustment. There is no allegation of fraud in the complaint, and there is no testimony showing that the adjuster made any false representations upon which plaintiff relied and was induced to sign the written contract of adjustment.

At the time plaintiff brought this action, he knew of exhibit 1, had his copy of it with him, and at that time had received and cashed a check for $164.04, and knew that he received $164.04, and admits it in his testimony, and admits receiving back the note. He then knew, or must be held to have known, that the amount of the written contract of adjustment was less than what he claims the adjustment actually was.

If the plaintiff's version is assumed to be true, he would not only have alleged the loss adjustment as he claims it was, but he should have alleged the making of the written contract of adjustment for $250, admitted the signing thereof, and have alleged that he was deceived and misled when he signed same, and pleaded that at the earliest opportunity he rescinded said written contract of adjustment and tendered back the $164.04 and his note, which were received under and by virtue of the terms of said written contract of adjustment; or if these facts should have appeared in the testimony, the plaintiff should ask to have amended his complaint so as to correspond with the proof and made the tender above referred to so that each party might be placed just where they were with reference to the subject of litigation.

As this case now stands, the written contract of loss adjustment has not been canceled or rescinded. The plaintiff still retains all the money and the note that he received from the defendant thereunder, and the defendant is held for a further loss upon an alleged entirely different and oral contract of settlement. It appears to me that this is directly in conflict with what our statutes require that a person who desires to rescind a contract must do.

Section 5934, Compiled Laws 1913, sets out very plainly what one who desires to rescind a contract must do. Such section in substance provides that, if the consent of the party rescinding was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom the contract is rescinded; or if through the fault of the party against whom the contract is rescinded the consideration fails in whole or in part; or if the consideration becomes entirely void or fails in any material respect from any cause, or by consent of all of the other parties,—the contract may be rescinded.

Section 5936, Compiled Laws 1913, provides that when not by consent rescission can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

1. He must rescind promptly upon discovering the facts which entitled him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

That the loss adjustment in writing for $250, signed by the insurance company by their adjuster and the plaintiff, is a contract, cannot be disputed.

The plaintiff admits he signed that contract, as the following testimony of the plaintiff on cross-examination will show:

Q. I show you exhibit 1, the loss adjustment, and ask you if that is your name on the bottom?

A. Yes.

Q. You signed that?

A. Yes, that's my writing.

Q. You knew you were signing up an adjustment when you signed this?

A. Yes.

Q. That was the adjustment for the grain you had lost?

A. Yes.

Q. It was the insurance adjuster who handed you that to sign?

A. Yes.

Q. That was on the 12th day of August, 1914?

A. Yes.

Q. You got a copy of this paper you signed up?

A. Yes.

Q. And you have held that in your possession all the time since?

A. Yes.

Testimony which shows that at the time Mathias received the check he knew the amount of the check is as follows:

Q. Mr. Mathias, at the time you got your check you knew it was a check from the insurance company for your loss of grain?

A. Yes.

Q. And you knew the amount of it?

A. Yes.

Q. $164.04?

A. Yes.

Q. Jake Graeber told you all about that?

A. Yes.

Q. At that time Jake Graeber told you you were getting back your note marked paid as a part of the settlement of the insurance?

A. Yes.

Q. And you took the note?

A. Yes.

Q. And you took the check?

A. No.

Q. Well, you indorsed it and told Graeber to give you credit for the money?

A. Yes, it went on the land debt.

Q. Now, Jake Graeber explained this whole matter to you in German?

A. Yes, he told me. He just showed me the check.

Q. He told you who it was from and what it was for?

A. Yes.

Q. And you said that was all right when he handed those things to you?

A. He said it was not enough.

Q. But you took it?

A. What could I do? I didn't know better than to take it.

Q. But you took it?

A. Yes.

Q. At the time you signed exhibit 1 here, you knew it was an adjustment with respect to the loss of your grain?

A. Yes. He thought it was $335.

This testimony conclusively shows that the plaintiff signed exhibit 1, the written loss adjustment, and he knew what he was signing when he did sign it, and that when he signed the check for $164.04 he knew the amount of that check, and he accepted his note back, and without any protest so far as the testimony shows.

Throughout all this evidence there is nothing which charges deceit, misrepresentation, or fraud; and it cannot be successfully disputed that exhibit 1, the loss adjustment signed in writing by both the plaintiff and defendant, is a contract. Not only that, but it is a contract, the full benefits of which the plaintiff accepted and retained. He received and retained the full amount of said written settlement by receiving $164.04 and his note, a total of $250. He has never rescinded that contract; never offered to return the money received thereunder; never offered to return the note for the premium; and notwithstanding that this contract was admittedly made, the plaintiff proceeds to bring in court another action alleging a different cause of action, totally disregarding this contract and entirely failing to offer to rescind and restore to the defendant the money and the note and everything of value received under said contract.

In the case of Swan v. Great Northern R. Co. post, 258, L.R.A. 1918F, 1063, 168 N. W. 657, a case which the writer claims is simi-

lar in principle to the case at bar, where the decision was signed by every member of this court, the following language appears, referring to the statutory provisions above set forth:

"These statutory provisions seem to be decisive of this case. The rules announced are plain and specific. They apply to all contracts. *They permit a person who has been defrauded to rescind the contract to which his consent was obtained by fraud, but in order to rescind he must restore or offer to restore the consideration received on the condition that the other party shall do likewise, unless the latter is unable or positively refuses to do so. These rules are largely codifications of the common-law rules, and are founded upon elementary principles of justice. 'One who has been led into a contract upon which he has received something of value cannot ignore the contract however induced, and proceed in a court of law as if the relations of the parties were wholly unaffected thereby. He cannot, while retaining its benefits and thus affirming the contract, treat it as though it did not exist.' 'He cannot treat it as good in part and void in part, but must affirm or void it as a whole.'* Home Ins. Co. v. Howard, 111 Ind. 544, 13 N. E. 104.

"*A contract induced by fraud is voidable at the option of the defrauded party. He has, upon discovery of the deceit, the option of either rescinding or affirming the transaction. He must do one or the other. He cannot do both. He cannot rescind in part and affirm the remainder.* Guild v. More, 32 N. D. 432, 455, 155 N. W. 44.

"*He cannot at the same time be permitted to abrogate the contract and retain the benefits he has received under it.* Beare v. Wright, 14 N. D. 26, 31, 69 L.R.A. 409, 103 N. W. 632, 8 Ann. Cas. 1057; Black, Rescission & Cancellation, §§ 561 et seq. *If he desires to rescind he must comply with the provisions of the statute and restore or tender what he has received as consideration for the contract on the condition that the other party shall do likewise, unless the latter is unable or positively refuses to do so.*"

In the case of Swan v. Great Northern R. Co. where the suit was against the railway company for damages, and the company claiming that for a certain sum in settlement in writing of plaintiff's claim for damages, plaintiff gave said company a release, this court said concerning plaintiff's claim for damages: "Respondent has cited sev-

eral cases in support of the general proposition that it is unnecessary to return or tender the consideration received for a release obtained by fraud as a condition precedent to the maintenance of a suit for damages, but that the amount received may be deducted from the verdict if one is obtained against the defendant. The decisions cited by the respondent are, by no means, the only judicial expression upon the subject. On the contrary, there is a square conflict in the decision. A large and probably the largest number of modern decisions announce a doctrine contrary to that contended for by respondent and support a rule in harmony with the conclusions we have reached in applying the provisions of our statutes. See 34 Cyc. 1071; Charron v. Northwestern Fuel Co. 149 Wis. 240, 49 L.R.A.(N.S.) 1162, 134 N. W. 1048, Ann. Cas. 1913E, 939; Burns v. Reading, 188 Mich. 591, 155 N. W. 479. As already stated, a release is a contract, and where a person, with full understanding of the character and nature of the instrument, executes a release and receives a consideration therefor, there is no more reason why he should be excused from returning or tendering a return of the consideration received than in other cases where a rescission is sought." ·

The case of Swan v. Great Northern R. Co. was an action for damages, and in rescission of a contract, and this court has unanimously held that, before said action could be obtained, Swan would be compelled to return the benefits which he received under the alleged settlement for which he gave his release.

It is clear the same principle applies to the case at bar. The plaintiff, knowing that he had signed the written contract of settlement and knowing that he had received $164.04, and his premium note back under said written settlement, if he desired to recover upon any other cause of action or any other alleged contract, he was in duty bound to tender back the benefits which he had received by reason of having signed a written contract in settlement of his claims against the insurance company.